## 72661. HUGHEY v. THE STATE.
(348 SE2d 901)

BIRDSONG, Presiding Judge.

The defendant, Edward Allen Hughey, appeals his conviction for

the sale of cocaine. Tommy Etheridge and his girl friend were arrested for the possession and sale of various drugs. He agreed to assist the police in return for a favorable recommendation to the trial judge in his case. Special Agent Gail Buckner, of the Georgia Bureau of Investigation, gave him the unlisted telephone number of the defendant to call to try to arrange a sale of cocaine. Etheridge called the defendant's number and asked to speak to "Allen" who had sold his girl friend a car. Following that conversation, he was searched and given $260 in money which had been photographed, and a truck which had been searched, and was followed to within a few hundred yards of defendant's residence. The first attempt ended in failure and Etheridge repeated the procedure at 5:00 p.m. that evening and was successful in purchasing 3 grams of cocaine. Immediately following the purchase, Etheridge gave Buckner 3 grams of cocaine and a $10 bill. Buckner obtained a search warrant for Hughey's home and returned at approximately 10:00 p.m. to execute the warrant. She was assisted by Detective Tony Martin of the Murray County Sheriff's Office. When they arrived at defendant's home, Officer Martin saw defendant come around the corner of his house and run into the woods. He was wearing red pants and a dark shirt. A search of defendant's house and the surrounding premises met with negative results. Two officers remained in the house and defendant returned at about 1:00 a.m. He was wearing red pants and a dark shirt. The officers confiscated the money in his possession. Agent Buckner was informed of the arrest and went to the police station. She examined the money and found one $20 bill which had been given to Etheridge.

Etheridge admitted that he had an unlisted phone number, even though he ran a junkyard and reconditioned and sold cars. He had three mechanics working for him. He was gone all afternoon the phone calls were made to his number by Etheridge. When he returned, he saw $50 on the counter and assumed it was a car payment. He placed it in his pocket. When the police executed the warrant: "I just seen [sic] all the police cars and I was scared. . . . [T]hey said 'Halt,' so there I went [sic]." Hughey brings this appeal. *Held*:

1. The general grounds are enumerated as error. Etheridge equivocated on his identification of Hughey as the person who sold him the cocaine. Etheridge had not known Hughey prior to this controlled purchase of drugs. His live-in girl friend had bought a car from Hughey and Etheridge had made some of the payments in person, but those payments had been made to Hughey's father. The man from whom he purchased the cocaine at Hughey's home was about his height (6 ft. 3 in.) and was slender and had dark hair. He wore bright pants. At trial the defendant was 5 ft., 9 in. tall and weighed approximately 185 pounds. However, Agent Buckner testified that at the time of his arrest, Hughey had brown hair and was of slender build

and weighed about 145 pounds. Hughey said he had worn "braces" for the last two years. Etheridge did not recall the person who sold him the cocaine wearing braces. However, Agent Buckner and Officer Martin did not see braces on the defendant the day of this incident. Whether the defendant was the individual who sold Etheridge the cocaine was a question of fact for the jury.

When the evidence is viewed in a light favorable to the verdict, as an appellate court is required to do, it is found to be sufficient to enable any rational trier of facts to find the existence of the offense charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

2. During voir dire examination of the venire, the question was asked whether anyone knew the defendant. A prospective juror replied: "I have arrested Mr. Hughey." This answer was made in the presence of the jury panel. Defendant's counsel moved for a mistrial, which was denied. The trial court took no corrective action. On appeal, defendant contends the trial court erred in not granting the mistrial and in failing to dismiss, sua sponte, all jury panels of the venire. At trial, the only objection made was in the form of a motion for mistrial. No request was made to dismiss the venire or to challenge the poll. See *Hagans v. State*, 77 Ga. App. 513 (48 SE2d 700). Since the jury had not been impaneled and sworn, the motion for mistrial was premature. *Ferguson v. State*, 219 Ga. 33, 35 (131 SE2d 538). However, this court has held that even though the counsel failed to follow the correct procedure or to use the proper procedural tool, we will not rely upon his inaccurate nomenclature, where the relief sought in a motion is clear. *Lingerfelt v. State*, 147 Ga. App. 371, 373 (249 SE2d 100).

Hence, at issue is whether the remaining members of the venire were tainted by this remark. The conduct of voir dire and decision of whether to strike a juror for cause lies within the sound discretion of the trial court. *Welch v. State*, 237 Ga. 665 (5) (229 SE2d 390); *Gatlin v. State*, 236 Ga. 707 (2) (225 SE2d 224). Our appellate court decisions are replete with cases in which disparaging and improper remarks have been made before the jury about the defendant which involved the discretion of the trial court in aborting the trial: "pull some pictures of [the defendant] from our [police] files" (*Stanley v. State*, 250 Ga. 3 (1) (295 SE2d 315)); "we had a Terry Knight so we went to our department, our [police] I.D. Department . . ." (*Knight v. State*, 243 Ga. 770, 775 (257 SE2d 182)); "I hadn't seen him no more since . . . he had been sent to Grady jail . . ." (*Williams v. State*, 242 Ga. 757 (2) (251 SE2d 254)); the picture of defendant was "a mug shot from the files of the DeKalb County Police Department . . ." (*Gravitt v. State*, 239 Ga. 709, 712 (239 SE2d 149)); a police officer testified "I checked his [defendant's] record" (*Ogles v. State*,

238 Ga. 716 (235 SE2d 384)); a police officer knew the defendant "from a previous deal" (*Brown v. State*, 237 Ga. 467 (1) (228 SE2d 853)); an officer obtained a picture of defendant "from the sheriff's department files" *Johnson v. State*, 236 Ga. 616 (2) (225 SE2d 14)); defendant's photo "came from the G.B.I. office" (*Fleming v. State*, 236 Ga. 434, 439 (224 SE2d 15)); defendant's photo was "in a rogues' gallery" (*Tanner v. State*, 228 Ga. 829, 832 (188 SE2d 512)); defendant's fingerprints were compared after the officer "pulled his fingerprint card" (*Weldon v. State*, 175 Ga. App. 172 (2) (333 SE2d 23)); the officer testified: "I knew [defendant] when he was at Alto" (*Yarber v. State*, 159 Ga. App. 392 (283 SE2d 620)).

Cases cited by the defendant, *Moore v. State*, 156 Ga. App. 92 (274 SE2d 107) and *Lingerfelt v. State*, 147 Ga. App. 371, supra, involved remarks before a jury that the defendant "was a firebug" in a case involving an arson charge, and defendant was "a peeping tom" in a case involving rape and sodomy. Those types of characterizations imply guilt, whereas in the instant case the reference was to an "arrest" which could have been as innocuous as a speeding ticket. While not approving of the trial court's inaction in this situation, we do not find the potential juror's reference to an arrest of the defendant so inherently prejudicial as to deny defendant a fair trial. The trial court did not abuse its discretion in refusing to grant the requested mistrial, and in failing, sua sponte, to dismiss the venire. See *Pruitt v. State*, 176 Ga. App. 317 (1) (335 SE2d 724).

*Judgment affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED SEPTEMBER 4, 1986 —
REHEARING DENIED SEPTEMBER 22, 1986

*Susan L. Frank*, for appellant.
*Jack O. Partain, District Attorney, Steven M. Harrison, Assistant District Attorney*, for appellee.